AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. |
| JAYSON ROBERT ROSS ) | 6:22-mj- 1192 |
| ) | |
| Defendant(s) ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 11, 2022__ in the county of __Brevard__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of methamphetamine, a Schedule II controlled substance |
| 21 U.S.C. § 841(a)(1) | Distribution of fentanyl, a Schedule II controlled substance |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Mathew Pagliarini, SA, FBI
Printed name and title

Sworn to before me by Zoom pursuant to Fed. R. Crim. P. 4.1.

Date: 3/4/22

_____
Judge's signature

City and state: Orlando, FL

Leslie Hoffman Price, U.S. Magistrate Judge
Printed name and title

STATE OF FLORIDA            Case No. 6:22-mj- 1192

COUNTY OF ORANGE

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Mathew Pagliarini, being duly sworn and deposed state as follows:

### INTRODUCTION

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since July 2009. As an FBI SA, I am an "investigator or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States, who is empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516(1).

2. As a graduate of the FBI Academy in Quantico, Virginia, I have received training in areas of drug trafficking, money laundering, violent gangs, bank robberies, Hobbs Act violations, homicides, crimes on the high seas, sexual assault, and sexual abuse cases. I have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as the methods used to finance drug trafficking and launder drug proceeds. I have been trained in the methods that drug traffickers use to distribute controlled substances, and I am familiar with the means by which drug traffickers manage, transport, and conceal the proceeds of their drug trafficking activities.

3. Before becoming an FBI Special Agent, I was a sworn law-enforcement officer with the Mount Pleasant Police Department in Mount Pleasant, South Carolina for approximately ten years. During that time, I received specialized training and conducted numerous investigations regarding traffic and vehicular homicides, drug interdiction and other various types of investigations as required.

4. Over the last approximately 22 years as a sworn law enforcement officer, I have received extensive training and experience concerning investigations of federal and state narcotics. In connection with my duties and responsibilities as a federal law enforcement officer, I have testified in federal and state judicial proceedings and prosecutions for violations of laws concerning controlled substances.

5. This affidavit concerns an investigation by law enforcement into offenses under federal criminal law, specifically distribution of methamphetamine and fentanyl, Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1) in the Middle District of Florida.

6. Throughout the course of this investigation, I have identified Jayson Robert ROSS as a subject participating in the illegal distribution of methamphetamine and fentanyl in the Middle District of Florida. This affidavit is made in support of a Criminal Complaint against Jayson Robert ROSS.

7. The facts set forth in this affidavit are based on my personal knowledge, as well as information, knowledge, observations, and investigations by other federal, state, and local law enforcement officers. Because this affidavit is being

submitted solely for establishing probable cause to arrest ROSS, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to support a criminal complaint.

## PROBABLE CAUSE

8. In August 2021, the FBI initiated an investigation focused on a criminal drug trafficking organization involved in the acquisition and distribution of large quantities of methamphetamine and heroin in the Middle District of Florida, specifically in Brevard County, Florida. The FBI and DEA partnered in this joint investigation. During this investigation, ROSS was identified as a large-scale distributor of methamphetamine and source of supply for individuals operating in Brevard County, Florida.

9. According to the National Crime and Information Center and Comprehensive Crime Information System (NCIC), ROSS has a criminal history that includes arrests for cyberstalking, harassment, possession of cocaine, possession of drug paraphernalia, and domestic violence. ROSS also has a conviction for misdemeanor stalking.

10. On February 11, 2022, FBI utilized a Confidential Human Source (CHS) to conduct a controlled purchase of approximately 2 ounces of methamphetamine and approximately 4 grams of heroin/fentanyl from ROSS in exchange for $600.00.

11. The CHS is providing information and services to the FBI and West Melbourne Police Department for monetary purposes. During the course of this

investigation, the information from the CHS has been corroborated by law enforcement officers and found to be accurate and credible through a controlled meeting, controlled telephone calls, and controlled purchases during law enforcement operations. The CHS has a criminal history that includes arrests and convictions for, but not limited to; grand theft, burglary, dealing in stolen property, manufacture cannabis, marijuana possession, domestic violence, and possession of a firearm by a convicted felon. The CHS is not currently on probation or parole, however the CHS has a grand theft of motor vehicle charge that is open and pending. The CHS is not receiving consideration on his open case and is working solely for payment.

12. The CHS communicated with ROSS via telephone calls and text messages to ROSS at telephone number (321)999-5122 to set up the drug transaction. On February 11, 2022, at approximately 2:32 p.m., the CHS called ROSS at telephone number (321)999-5122. When ROSS answered, the CHS said, "You told me to hit you up around this time?," to which ROSS replied, "Yes um you want to do the same thing?" ROSS was referring to a previous conversation he had with the CHS on February 9, 2022, where they discussed purchasing 2 ounces of methamphetamine. The CHS replied, "Yea I can do that." ROSS then asked the CHS how long it would take him/her to get to his (ROSS') residence. The CHS replied, "about 20 minutes," to which ROSS said, "yes you can go ahead and head this way." ROSS further advised the CHS to park at a business across the street and to call when the CHS got there.

4

13. At approximately 2:56 p.m., the CHS parked at the agreed-upon business, called ROSS to advise he/she was there, and walked across the street to ROSS' residence. The CHS had previously been given $600.00 in government provided funds to pay for the transaction. The CHS and the CHS' vehicle were searched by law enforcement prior to going to ROSS' residence and no contraband was found. The CHS was also outfitted with recording and transmitting devices. At approximately 2:59 p.m., the CHS arrived at ROSS' residence. ROSS was waiting on the front porch of his residence when the CHS arrived. At approximately 3:04 p.m., ROSS and the CHS entered ROSS' residence to conduct the transaction.

14. While inside, the CHS gave ROSS $600.00 in exchange for 2 ounces of methamphetamine and 4 grams of heroin, part of which was fronted to the CHS. $500 went towards the 2 ounces of methamphetamine and $100 went towards the 4 grams of heroin, with the understanding that the CHS still owed $150 for the total 4 grams of heroin. Prior to providing the CHS with the methamphetamine and heroin, ROSS obtained the methamphetamine from a container he had inside a closet and the heroin from inside of a safe in the same room.

15. At approximately 3:30 p.m., the CHS left ROSS' residence and returned to his/her vehicle. The CHS then returned to a pre-determined meeting location and turned over the drug evidence to law enforcement. The CHS and the CHS' vehicle were searched again for contraband, and none was found. The suspected methamphetamine was field tested, which returned a presumptive

positive result for the presence of methamphetamine and weighed approximately 60.3 grams. The suspected heroin was field tested and returned a presumptive positive result for the presence of fentanyl and weighed approximately 5.4 grams. The drug evidence was then sent to the DEA laboratory for testing where final analysis is pending.

16. Below are photographs of the 2 clear plastic bags containing methamphetamine (top) and the clear plastic bag containing fentanyl (bottom) which was seized during the February 11, 2022, controlled purchase:





17. On February 25, 2022, I obtained a search warrant for ROSS' residence, which was signed by United States Magistrate Judge Leslie Hoffman Price (Case No. 6:22-mj-1157).

18. On March 3, 2022, I, along with other agents, executed the search warrant at ROSS' residence and a preliminary search revealed the following items: approximately half a kilogram of suspected methamphetamine, several ounces of suspected fentanyl, and over four pounds of marijuana. Two firearms were also located within the residence, one in ROSS' bedroom and another in a room utilized by ROSS as an office.

19. Special Agent Brian Lammers with the Drug Enforcement Administration read ROSS his *Miranda* rights, ROSS waived his rights, and provided a statement. ROSS stated, among other things, that all of the drugs found in the residence belonged to him.

20. I field tested the suspected methamphetamine, which returned a presumptive positive result for the presence of methamphetamine. I also field tested the suspected fentanyl, which returned a presumptive positive result for the presence of fentanyl.

21. Based on the above facts, probable cause exists to believe that on or about February 11, 2022, Jayson Robert ROSS did distribute approximately 60.3 grams of a mixture and substance containing a detectable amount of

methamphetamine and approximately 5.4 grams of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1).

_____
Mathew Pagl...
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before by Zoom this \_\_4th\_\_ day of March, 2022, Orlando, Florida.

_____
LESLIE HOFFMAN PRICE
United States Magistrate Judge

8